Rec'd _____ U.S. Courts Filed _____

SEP 22 2004

Cameron S. Burke
Clerk, Idaho

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, | Case No. CV-03-314-E-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| RENEE SNYDER, Field Manager, Challis Field Office, Bureau of Land Management; and BUREAU OF LAND MANAGEMENT, | |
| Defendants. | |

## INTRODUCTION

The Court has before it cross-motions for summary judgment filed by Western Watersheds Project (WWP) and the Government. The Court heard oral argument on September 8, 2004, and took the motions under advisement. The Court now finds that WWP's motion should be granted, and the Government's motion denied, for the reasons expressed below.

## FACTUAL BACKGROUND

In this lawsuit, WWP challenges the BLM's decision to renew a grazing permit on the Burnt Creek Allotment. That decision was based on an

**Memorandum Decision and Order – Page 1**

Environmental Assessment (EA) completed in 2002. WWP argues, among other points, that the EA's failure to consider viable alternatives violates NEPA.

The 4,884 acre Burnt Creek Allotment is managed by the BLM and lies entirely within the 24,980 acre Burnt Creek Wilderness Study Area. Flowing through the Allotment is Burnt Creek, a spawning habitat for bull trout, which is listed as a threatened species under the Endangered Species Act.

The BLM's management of this area is governed by the Challis Resource Management Plan (RMP) issued in July of 1999. The BLM also prepared an EA, issued on August 4, 1999, evaluating permit renewals for 24 allotments including the Burnt Creek Allotment. In that EA, the Fish and Wildlife Service concluded that grazing on the Burnt Creek Allotment "may affect, but is not likely to adversely affect" bull trout. AR at 426-431.

Based on the 1999 EA and the 1999 RMP, the BLM renewed the grazing permit on the Burnt Creek Allotment on January 23, 2001 for ten years. Soon thereafter, however, the BLM discovered that grazing on the Allotment was violating the Fundamentals of Rangeland Health regulations. *See* 43 C.F.R. § 4180 *et seq.* Moreover, the BLM learned during a review of the 2001 grazing season that the permittee had failed to comply with terms of the grazing permit, including violating the restrictions on grazing along Burnt Creek.

**Memorandum Decision and Order – Page 2**

The BLM disclosed this information to the FWS. On May 15, 2002, the FWS stated in a letter that it believed that continued grazing on the Allotment would likely have an adverse affect on bull trout, and recommended that the BLM initiate formal consultation.

The BLM did so, and conducted a field study with personnel from the FWS and the permittee. During that field study, the permittee proposed moving the grazing season away from the hot summer months and changing the kind and number of livestock to reduce the impact of the grazing. Notes from this trip state that "the group agreed this alternative was reasonable and the BLM agreed to move forward with changing the 2002 permitted use for the allotment." AR at 722.

On July 15, 2002, the BLM issued an EA analyzing the permittee's proposal. The EA also analyzed a single alternative that would maintain the status quo. On September 25, 2002, the FWS found that the permittee's proposal "may affect, but is not likely to adversely affect" bull trout. On September 20, 2002, the BLM issued a Full Force and Effect Grazing Decision that adopted the permittee's proposal and immediately renewed his grazing permit.

WWP challenges that decision here. That decision is flawed, WWP claims, because it is based on an EA that failed to consider viable alternatives.

**Memorandum Decision and Order – Page 3**

## ANALYSIS

1. <u>**Waiver**</u>

The BLM argues that WWP waived its arguments when it failed to raise them during the EA's comment period. The Court disagrees. During the comment period, WWP sent a letter to the BLM, dated September 26, 2002, asserting that "[n]o grazing by livestock this fall is clearly more beneficial on the Burnt Creek Allotment than any level of authorized livestock use." AR at 822. Grazing restrictions fail, WWP's letter explains, because "neither the permittee nor the BLM can be trusted to see that they are enforced." *Id.*

In that comment letter, WWP sought a total ban on grazing. In this lawsuit, it claims the 2002 EA should have considered a total ban on grazing. If these twin positions are not identical they are certainly fraternal. Indeed, the positions are so close that the BLM cannot claim unfair surprise. Before issuing the 2002 EA, and during the comment period, the BLM knew that WWP was demanding consideration of a total grazing ban. Yet the BLM did not consider that alternative in issuing its Full Force and Effect decision. The BLM cannot now claim ambush when WWP complains in this lawsuit about the failure to consider a total grazing ban.

WWP had an obligation to "alert the agency to [its] position and

Memorandum Decision and Order – Page 4

contentions," and not to make its complaints "cryptic or obscure." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 553-54 (1978). WWP satisfied that obligation.

2.  **Consideration of Alternatives**

NEPA compliance is reviewed under the Administrative Procedure Act, 5 U.S.C. § 706 *et seq. Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 973 (9th Cir. 2003). An agency decision may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Turtle Island*, 340 F.3d at 973.

NEPA "does not mandate particular results, but simply describes the necessary process that an agency must follow in issuing an EIS." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). A court must avoid passing judgment on the substance of an agency's decision; its focus must be on ensuring that agencies took a "hard look" at the environmental consequences of their decisions. *Id.* at 350. In other words, a reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. This inquiry must be searching and careful, but the ultimate standard of review is a narrow one." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989).

Under NEPA, the BLM was under a mandate to "study, develop, and describe appropriate alternatives to recommended courses of action." 42 U.S.C. § 4332(E). The BLM was also required to include in its EA a "detailed statement . . . on . . . alternatives to the proposed action." 42 U.S.C. § 4332(C)(iii).

NEPA regulations describe this alternatives requirement as the "heart" of the EA and require the agency to produce an EA that "[r]igorously explore[s] and objectively evaluate[s] all reasonable alternatives" so that the agency can "sharply defin[e] the issues and provid[e] a clear basis for choice among options by the decisionmaker and the public." 40 C.F.R. § 1502.14.

The rule of reason guides "both the choice of alternatives as well as the extent to which the [EA] must discuss each alternative." *City of Carmel-By-The-Sea v. United States Dep't of Transp.*, 123 F.3d 1142, 1155 (9th Cir. 1997). Under the rule of reason, the BLM "need not consider an infinite range of alternatives, only reasonable or feasible ones." *Id.* An agency cannot define its objectives in unreasonably narrow terms so that only one alternative would accomplish the agency's goals, and the EA "would become a foreordained formality." *Id.* at 1155 (quoting from *Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190 (D.C. Cir.1991)).

Here, the only alternative to the permittee's proposal was to maintain the

status quo. Yet the BLM had found that the status quo was violating the Fundamentals of Rangeland Health. By limiting the range of choices to this single unacceptable alternative, the BLM rendered the EA "a foreordained formality." *Carmel-By-The-Sea*, 123 F.3d at 1155.

The Ninth Circuit has previously held that an agency violated NEPA when the only alternative it considered was to maintain the status quo. *Public Citizen v. Dept. of Transp.*, 316 F.3d 1002, 1026 (9th Cir. 2003), *overruled on other grounds, Dept. of Transp. v. Public Citizen*, 124 S. Ct. 2204 (2004). While there may be occasions when the status quo is a viable alternative, that is not the case here where it has been found to violate grazing regulations.

For these reasons, the Court cannot find that the BLM took a "hard look" at the environmental consequences of renewing the permit on the Burnt Creek Allotment. Thus, the BLM's decision to renew that permit is arbitrary and capricious under the APA. The Court will therefore grant WWP's motion for summary judgment, and deny the Government's motion.

In its motion, WWP seeks only a ruling reversing the BLM's Full Force and Effect decision, and reserves the right to seek injunctive relief (which it prayed for in its complaint) at a later date. The Court shall therefore construe WWP's motion as a motion for partial summary judgment. Accordingly, the Court will not enter a

final Judgment since this decision does not fully resolve all of WWP's claims, but will instead resolve WWP's motion by this Memorandum Decision and Order.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that WWP's motion for summary judgment (Docket No. 16), which the Court shall construe as a motion for partial summary judgment, is GRANTED and the Full Force and Effect decision of the BLM referenced above is REVERSED.

IT IS FURTHER ORDERED, that the Government's motion for summary judgment (Docket No. 21) is DENIED.

DATED this 22nd day of September, 2004.

B. LYNN WINMILL
Chief Judge, United States District Court

United States District Court
for the
District of Idaho
September 24, 2004

* * CLERK'S CERTIFICATE OF MAILING * *

Re:   4:03-cv-00314

I certify that I caused a copy of the attached document to be mailed or faxed to the following named persons:

    Judith M Brawer, Esq.   1-208-342-8286
    ADVOCATES FOR THE WEST
    PO Box 1612
    Boise, ID   83701

    William M Eddie, Esq.   1-208-342-8286
    ADVOCATES FOR THE WEST
    PO Box 1612
    Boise, ID   83701

    Laird J Lucas, Esq.
    PO Box 1342
    Boise, ID   83701

    Alan G Burrow, Esq.   1-208-334-9375
    US ATTORNEY'S OFFICE
    Box 32
    Boise, ID   83707

    Alan G Burrow, Esq.   1-208-334-9375
    US ATTORNEY'S OFFICE
    MK Plaza, Plaza IV
    800 Park Blvd #600
    Boise, ID   83712


    ✓ Chief Judge B. Lynn Winmill
    ___ Judge Edward J. Lodge
    ___ Chief Magistrate Judge Larry M. Boyle
    ___ Magistrate Judge Mikel H. Williams

    Visiting Judges:
    ___ Judge David O. Carter
    ___ Judge John C. Coughenour
    ___ Judge Thomas S. Zilly

Cameron S. Burke, Clerk

Date: _9-24-04_     BY: _____
                         (Deputy Clerk)